RENDERED:  JULY 31, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2026-CA-0173-ME


B.M.M.                                                                  APPELLANT


|       | APPEAL FROM LOGAN CIRCUIT COURT |
|-------|--------------------------------------|
| v.    | HONORABLE JOE W. HENDRICKS, JR., JUDGE |
|       | ACTION NO. 24-AD-00012 |


B.G.; C.G.; K.D.G., A MINOR CHILD;
AND N.D.G.                                                        APPELLEES

AND


NO. 2026-CA-0174-ME


B.M.M.                                                                  APPELLANT


|       | APPEAL FROM LOGAN CIRCUIT COURT |
|-------|--------------------------------------|
| v.    | HONORABLE JOE W. HENDRICKS, JR., JUDGE |
|       | ACTION NO. 24-AD-00013 |


B.G.; C.G.; K.R.G., A MINOR CHILD;
AND N.D.G.                                                        APPELLEES

\*\* \*\* \*\* \*\* \*\*

BEFORE:  ACREE, CALDWELL, AND COMBS, JUDGES.

COMBS, JUDGE:  B.M.M. (Mother) appeals two Logan Circuit Court Judgments of Adoption terminating her parental rights to K.R.G. and K.D.G. (referred to collectively as "the children").  After our review, we affirm.

K.R.G. was born in 2017.  Her paternal grandparents, C.G. and B.G. (referred to collectively as "Grandparents"), became her custodians when her parents were arrested on drug-related criminal charges.  K.R.G. was briefly reunited with Mother after K.D.G., her brother, was born in 2020, but she was soon returned to the care of her grandparents.  K.D.G. lived with Mother until he was seven months of age when he, too, was placed in the care of his grandparents.  In 2022, the Logan Circuit Court granted sole custody of the children to Grandparents.  Mother did not participate in those proceedings because she had fled the Commonwealth in an effort to avoid a criminal action pending against her.

In March 2024, pursuant to the provisions of KRS[1] 199.502, Grandparents filed verified petitions to adopt each of the children.  In their petitions, Grandparents alleged that the children's parents had abandoned them for

---

[1] Kentucky Revised Statutes.

a period of not less than ninety (90) days; that for a period of not less than six (6) months, they had failed or refused to provide or had been incapable of providing essential parental care and protection with no reasonable expectation of improvement in their willingness or ability to do so; and for reasons other than poverty alone, that they had repeatedly failed to provide or were incapable of providing essential food, clothing, shelter, medical care, or education to the children with no reasonable expectation of improvement in their willingness or ability to do so. Mother had not seen the children since April 2021. The children's biological father eventually consented to the adoptions. Counsel was appointed by the court to represent Mother's interests; a guardian *ad litem* was appointed to represent the children.

Once the petitions for adoption were filed, the Cabinet for Health and Family Services undertook its mandatory investigation and filed its confidential reports. Reports prepared by the children's guardian *ad litem* were also filed. The guardian *ad litem* determined that the petitions were in order and appeared to follow statutory requirements. She recommended termination of Mother's parental rights and believed that the proposed adoptions were in the children's best interests.

The Logan Circuit Court conducted a final hearing with respect to the petitions over the course of two days in December 2025. Following the

presentation of evidence, the court found, in part, that Mother had abandoned the children, and -- with the exception of some child support that she paid through wage garnishment -- that she left the Grandparents with the entire responsibility of raising the children.  It concluded that grounds for termination of Mother's parental rights and adoption of the children by Grandparents had been proven by clear and convincing evidence.  It specifically rejected Mother's contention that there was a reasonable expectation that she could eventually care for the children properly.  This appeal followed.

The same standard of review is used in both an adoption without the consent of biological parents and in an involuntary termination of parental rights proceeding.  *See Moore v. Asente*, 110 S.W.3d 336, 351 (Ky. 2003).  A judgment which terminates parental rights to a child shall only be reversed where it is clearly erroneous -- *i.e.*, where the circuit court's decision is not supported by clear and convincing evidence.  *See B.L. v. J.S.*, 434 S.W.3d 61, 65 (Ky. App. 2014); *see also* Kentucky Civil Rules of Procedure (CR) 52.01.  Because termination decisions are especially fact-sensitive, appellate courts are loath to reverse them.  *See Cabinet for Health & Fam. Servs. v. K.H.*, 423 S.W.3d 204, 211 (Ky. 2014).

The circuit court may grant an adoption petition where it determines that: (1) the petitioners complied with the jurisdictional requirements for adoption; (2) any of the conditions outlined in KRS 199.502(1) have been established by

clear and convincing evidence; (3) the petitioners are of good moral character; of reputable standing in the community; and are able to maintain and educate the child; and, finally, (4) the best interests of the child will be promoted by the adoption. *A.K.H. v. J.D.C.*, 619 S.W.3d 425, 431 (Ky. App. 2021).

On appeal, Mother argues that she did not intend immediately to "rip [the children] from the home they have been in[.]" Therefore, she contends that the circuit court erred by disregarding evidence indicating that "the dynamic of the adoptive family would not have changed in the slightest had the adoption petitions been denied." She explains that she had not sought to regain custody of the children -- but only to preserve her right to seek reunification later. She also argues that the circuit court "applied improper weight" to her frank admission to having abandoned the children. She explains that the court failed to consider the maturity of her decision to be entirely candid with the court. Next, Mother contends that the court failed to weigh properly the eldest child's desire to see her. Mother contends that the circuit court abused its discretion by failing to conclude that there was a reasonable expectation of significant improvement in her ability to care for the children and to provide for their well-being. In summary, Mother argues that "the best interest findings should have gone the other way."

The circuit court found that multiple factors of KRS 199.502(1) existed in support of adoption. However, it needed only to find the existence of

one. *See C.J. v. M.S.*, 572 S.W.3d 492, 496 (Ky. App. 2019). In light of Mother's testimony indicating that she partied and drank every weekend and her direct admission that she abandoned the children when she absconded, we cannot conclude that the trial court erred by finding that her abandonment of the children was shown by clear and convincing evidence. This was a sufficient ground upon which to grant the adoption petitions. There was no error. In light of that conclusion, we need not discuss the circuit court's finding that there was no reasonable expectation of significant improvement in her ability to care for the children and to provide for their well-being in the future.

We are unpersuaded by Mother's argument that "the best interest findings should have gone the other way." "Best interest" regarding children is not explicitly defined by our jurisprudence. Instead, the determination is left largely to the sound discretion of the circuit court. *Pennington v. Marcum*, 266 S.W.3d 759, 769 (Ky. 2008). Some statutes provide a non-exhaustive list of factors for the courts to consider when evaluating a child's best interest. *See, e.g.*, KRS 403.270(4) (providing a list of factors for lower courts to consider in determining custody in civil domestic relations cases). And KRS 625.090 identifies factors for the circuit court to consider with respect to involuntary termination of parental rights actions. There is no equivalent list in KRS Chapter 199. Instead, KRS 199.520(1) merely provides that an adoption shall require a finding "that the best

interest of the child will be promoted by the adoption and that the child is suitable for adoption."

While acknowledging the differences between the statutory provisions, our courts have occasionally utilized the best interest factors listed in KRS 625.090(3) to guide its determination of a child's best interests in a contested adoption proceeding. *See, e.g.*, *E.L.C. v. L.W.H.*, Nos. 2023-CA-0052-ME, 2023-CA-0176-ME, 2023 WL 6165331, at *4 (Ky. App. Sep. 22, 2023). Nevertheless, the circuit court need not have referred to them specifically or made explicit findings regarding every factor. *See D.G.R. v. Cabinet for Health & Fam. Servs.*, 364 S.W.3d 106, 115 (Ky. 2012); *see also K.H.*, 423 S.W.3d at 212.

The record on appeal in this case reveals that Mother has not taken any real interest in the children. In fact, it is uncontested that she abandoned them entirely. Additionally, it is clear that the circuit court considered the well-being of the children themselves and their relationship with Grandparents. It also considered the Cabinet's investigation regarding both the children and the Grandparents and reviewed the reports and recommendations of the guardian *ad litem*, who felt that the adoption petitions should be granted. Finally, the court decided that it was in the children's best interest to leave to the Grandparents' discretion the question of whether the children would visit with Mother. Nothing

in the record suggests that the circuit court failed to carefully evaluate the children's best interests.

Based upon the foregoing analysis, the judgments of the Logan Circuit Court are affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:

Michael W. Cotthoff
Hopkinsville, Kentucky

BRIEF FOR APPELLEE:

Pamela C. Bratcher
Bowling Green, Kentucky